C. R. "Jake" COOK, T. W. Cook and Lee DeForke, Plaintiffs-Appellants,

v.

The HOUSTON POST, Ralph Williams, Joseph Perino, Marvin Kent and Terry Collins, Defendants-Appellees.

No. 78–1342.

United States Court of Appeals, Fifth Circuit.

May 7, 1980.

792

Ronald H. Tonkin, Houston, Tex., for C. R. "Jake" Cook.

Michael Maness, Houston, Tex., for C. R. "Jake" Cook and Lee DeForke.

Anthony J. P. Farris, Alvin A. Horne, Houston, Tex., for T. W. Cook.

John L. McConn, Jr., Richard A. Sheehy, Charles B. Holm, Houston, Tex., for the Houston Post and Ralph Williams.

William E. Heitkamp, Houston, Tex., for Joseph Perino.

Clyde F. Dewitt, III, Asst. Dist. Atty., Houston, Tex., for Marvin Keny and Terry Collins.

Before AINSWORTH and HENDERSON, Circuit Judges, and HUNTER,* District Judge.

EDWIN F. HUNTER, Jr., District Judge.

It was in October of 1972 that Williams, an investigative reporter for The Houston Post, began to report and cause to be published stories about the alleged corruption in the Houston Fire Department. The Grand Jury investigation and resultant publicity concerning official misconduct had been in progress several months before Collins, an Assistant District Attorney for Harris County, was assigned to the case. It was in March of 1973 that "Jake" Cook and two other firemen (T. W. Cook and DeForke) were indicted by a Harris County grand jury on various charges involving misuse or theft of departmental property. They were acquitted by a petit jury on September 20, 1973. Some 15 months thereafter they filed this complaint alleging a conspiracy to deprive them of their civil rights.[1] The gravamen of this § 1983 action is that Perino, Kent, Williams and The Houston Post embarked on a campaign to discredit the administration of "Jake" Cook, then the City of Houston Fire Chief, and that thereafter Terry Collins joined in the conspiracy which resulted in the indictment, trial and acquittal of appellants. Plaintiffs appeal from a grant of summary judgment in favor of all defendants. We affirm.

While not explicitly stated, it seems clear that Judge Cowan granted the motions on at least two grounds: (1) that Terry Collins, who was an Assistant District Attorney at all times relevant, was absolutely immune from suit and the other defendants were entitled to derivative immunity (see *Imbler*

v. *Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Slavin v. Curry,* 574 F.2d 1256 (5th Cir. 1978), *modified on other grounds,* 583 F.2d 779 (1978); *Guedry v. Ford,* 431 F.2d 660 (5th Cir. 1970)); and (2) the plaintiffs failed to demonstrate that any constitutional right was deprived. *See, e. g., Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976).

■ The only person alleged to be acting under color of state law was the prosecutor, Collins. Prosecutors are immune from liability in suits under § 1983 for acts that are within the scope of prosecutorial duties. *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). This Court, in interpreting *Imbler,* has extended prosecutorial immunity to a prosecutor's actions in initiating, investigating and pursuing a criminal prosecution. *Henzel v. Gerstein,* 608 F.2d 654 (5th Cir. 1979); *Conner v. Pickett,* 552 F.2d 585 (5th Cir. 1976). The specific acts complained of here were clearly within the *Imbler* shelter.

■ Collins would have been negligent in his duties as a prosecutor had he not interviewed witnesses before presenting their testimony to the Grand Jury. His duties as a prosecutor required him to obtain, examine and interpret documents.[2] As Judge Cowan correctly pointed out in his Order Granting Summary Judgment,

"Not all of an advocate's work is done in the courtroom. For a lawyer to properly try a case, he must confer with witnesses, and conduct some of his own factual investigation."

The District Court dismissal of the complaint against Collins is affirmed.

---

* District Judge of the Western District of Louisiana, sitting by designation.

1. Appellants have abandoned all other counts alleged in the court below, including libel, slander, false arrest and false imprisonment.

2. It was additionally argued that he signed and served grand jury subpoenas. He administered oaths to two Grand Jury witnesses at the request of the jury foreman (See Articles 20.10 and 20.16 of the Texas Code of Criminal Procedure). It is alleged that pre-trial statements to

media personnel were prejudicial to Cook. Appellants do not specify what these statements were or to whom they were made. Collins was called as a witness and gave his interpretation of what another assistant had told him about a conversation between the Mayor of Houston and District Attorney Vance. There is nothing to connect these alleged acts of the prosecutor, which they claim take the prosecutor beyond the protection of *Imbler,* with any denial of plaintiffs' civil rights.

■ The other defendants are Williams (the investigative reporter), The Houston Post, and two firemen (Perino and Kent). It is alleged that they acted in concert with the prosecutor.[3] The District Court, citing *Guedry v. Ford*, 431 F.2d 660 (5th Cir. 1970), concluded that private persons alleged to have conspired with immune state officials cannot be held under § 1983, because they would not be conspiring with persons acting under color of law against whom a § 1983 claim could be sustained. But in *Sparks v. Duval County Ranch Company, Inc.*, 604 F.2d 976 (5th Cir. 1979) (en banc), decided after Judge Cowan's order was issued, this Court abolished the doctrine of derivative immunity for private persons who conspire with immune state officials. In the light of *Sparks*, summary judgment on that basis may not be sustained for the remaining defendants.[4]

The District Judge cited, in addition to *Imbler v. Pachtman* (concerning prosecutorial immunity), *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405, which held that reputation alone, apart from some more tangible interest such as employment, does not implicate any property or liberty interest sufficient to invoke the procedural protection of the Due Process Clause; hence, to establish a claim under § 1983 and the Fourteenth Amendment more must be involved than defamation. In *Paul*, a false police flyer publicized an arrest for crime. Here, the complained of conduct publicized an investigation by a grand jury resulting in an indictment for a felony.

In their brief to this Court, plaintiffs suggest that the gravamen of their complaint is that the defendants embarked on a campaign to discredit the administration of C. R. "Jake" Cook, and that "Jake" Cook voluntarily resigned because of the bad publicity that the Houston Fire Department was receiving. We see little difference between this claim and the damage to reputation claim in *Paul v. Davis*, supra.

■ The Fourteenth Amendment does not protect against all deprivations of liberty or property. It protects only against deprivations of liberty accomplished without due process of law. The Due Process Clause does not *ex proprio vigore* extend to a person a right to be free of injury merely because the state is characterized as the tortfeasor. The Constitution does not guarantee that only the guilty will be indicted and arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed for every suspect arrested. *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). Plaintiffs were indicted by a grand jury and acquitted by a petit jury.

■ Appellants' interest with reputation, false arrest, malicious prosecution, libel and slander are matters which the State protects by virtue of its tort law, providing a forum for those interests by means of damage actions. Diversity does not exist in this case and in his order of dismissal the district judge noted that the federal claims were "shaky" and that plaintiffs were free to have pursued the various pendent claims in the state court.

Having been deprived of no rights secured under the Constitution, appellants

---

3. Williams did write a series of articles dealing with the Houston Fire Department. The subject matter of these articles, possible misuse of public funds by a public official, was a proper subject for a news story. An investigative reporter's job includes talking to people, developing facts, obtaining whatever documents are available and writing a story. The Houston Post did publish a series of articles concerning the Houston Fire Department. This was certainly a legitimate activity. Plaintiffs have raised no genuine issue of any material fact that The Post or Williams were doing anything other than their normal job as a newspaper and a reporter. The allegation of conspiracy between Williams, The Post and the prosecutor were wholly conclusory and cannot withstand a motion for summary judgment.

4. The Supreme Court of the United States has now granted a Writ of Certiorari in *Sparks*. —— U.S. ----, 100 S.Ct. 1339, 63 L.Ed.2d 777 (1980). The case addresses the following question:

"Can a private citizen be liable for damages under 42 U.S.C. § 1983 when he is alleged co-conspirator with State Court Judge who is immune from § 1983 claim under doctrine of judicial immunity?"

have no claim cognizable under § 1983. It is argued that the alleged conspiracy to discredit the administration of "Jake" Cook is cognizable under 42 U.S.C. § 1985. Plaintiffs have not even suggested a class-based discriminatory motive, therefore have no claim under 42 U.S.C. § 1985(3). *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *McLeelan v. Mississippi Power and Light Company*, 545 F.2d 919 (5th Cir. 1977) (en banc).

The District Court's summary judgment in favor of all defendants is AFFIRMED.