**Lenell GETER, et al., Plaintiffs–Appellees,**

v.

**James FORTENBERRY, et al., Defendants,**

**Henry Wade, Randall Isenberg, County of Dallas, Texas, D.C. Kuhn, City of Balch Springs and Balch Springs Police Department, Defendants–Appellants.**

No. 87–1605.

United States Court of Appeals, Fifth Circuit.

July 26, 1988.

Lawrence W. Jackson, Dallas, Tex., for City of Balch Springs, Tex., et al.

Joseph E. Scuro, Jr., Dallas, Tex., for Fortenberry and Powers.

Donald W. Hill, Donald W. Hicks, Sr., Dallas, Tex., George E. Hairston, New York City, for Geter and Williams.

Before WISDOM, RUBIN, and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

The issue before us is whether the district court erred in rejecting, pending further discovery by appellee, the official immunity defenses raised by a municipal police officer and two county prosecutors who were sued under 42 U.S.C. § 1983. We have jurisdiction over this interlocutory appeal. Concerning the prosecutors, we reverse the district court; with respect to the police officer, we dismiss the appeal and remand.

## BACKGROUND

In August 1982, a lone black male robbed the Kentucky Fried Chicken outlets in Greenville and Balch Springs, Texas; the Taco Bell outlet and a 7–11 store in Garland, Texas; and a woman in Greenville. Appellee Lenell Geter, who lived in the area, was arrested on August 24 and charged with the Taco Bell robbery. He was later charged with and indicted for robbing the Kentucky Fried Chicken outlet in Balch Springs. Geter's roommate, Anthony Williams, was arrested on August 25 and charged with robbing the 7–11 store. Geter was convicted in October 1982 and received a life sentence. In December 1983, while Geter's appeal was pending, appellant Dallas County District Attorney Henry Wade joined Geter's motion for new trial. In March 1984, Wade dismissed the indictment and Geter was released from prison after several witnesses identified another black male as the robber. Williams was tried but was acquitted.

Peter L. Harlan, Asst. Dist. Atty., Dallas, Tex., for Wade, et al.

Geter filed an action against Dallas County, numerous municipalities, police departments, police officers, and certain prosecutors alleging violations of 42 U.S.C. §§ 1981, 1983, 1985, and 1986 and certain state laws, seeking monetary damages and equitable relief. The Dallas County defendants (Wade, assistant district attorney Randall Isenberg, and Dallas County) and the Balch Springs defendants (City of Balch Springs, Balch Springs police department, and police officers D.C. Kuhn and Thomas G. McGee) filed motions for summary judgment in which they asserted *inter alia* the defenses of absolute and qualified official immunity and contended that Geter failed to plead with sufficient specificity. The district court dismissed all claims against the Dallas County defendants and Balch Springs defendants under §§ 1981, 1985, and 1986, and all § 1983 claims against Balch Springs police officer McGee. It declined to dismiss § 1983 claims against Balch Springs police officer Kuhn and Dallas County prosecutors Wade and Isenberg, concluding that Geter should be permitted to conduct discovery before the court would rule on their asserted immunity defenses. The individuals appeal.[1]

## JURISDICTION

Appellants vigorously contest the district court's denial, albeit without prejudice, of their motions for summary judgment based on their official immunity from suit. We have jurisdiction to consider this issue because the district court's denial of an immunity defense is an appealable "final decision" under 28 U.S.C. § 1291, notwithstanding the absence of a final judgment. *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985). Jurisdiction obtains over any order by the district court that threatens official defendants, sued individually for damages under 42 U.S.C. § 1983, with the cost and diversion of time attendant on pretrial discovery, if there are no fact issues that mandate discovery specifically pertinent to an immuni-

ty defense. *Lion Boulos v. Wilson*, 834 F.2d 504, 506–09 (5th Cir.1987). The reason underlying immediate appealability of such orders is that "immunity" in this instance means immunity from suit, not simply immunity from liability. Such immunity, and the policies it furthers, would be effectively lost if this case were permitted to proceed. *Mitchell*, 105 S.Ct. at 2816. As we discuss below, that is the situation for all of the defendants-appellants save Officer Kuhn, with respect to whom there remains a disputed fact issue on which resolution of his claim of immunity turns.

## IMMUNITY

Although the statutory language of § 1983 does not expressly provide for an immunity defense, courts have consistently held that "government officials are entitled to some form of immunity from suits for damages. As recognized at common law, public officers require this protection to shield them from undue interference with their duties and from potentially disabling threats of liability." *Harlow v. Fitzgerald*, 457 U.S. 800, 806, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396 (1982). The purpose of the immunity doctrine is to avoid "distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service." *Id.* at 816, 102 S.Ct. at 2737. "Official immunity may be either absolute or qualified, depending on the functions performed by the particular official at issue. Qualified immunity shields only that conduct not violative of clearly established constitutional [or statutory] rights of which a reasonable person would have known. Absolute immunity, in contrast, precludes any action for damages, so long as the challenged conduct falls within the scope of the immunity." *Austin v. Borel*, 830 F.2d 1356, 1358–59 (5th Cir.1987).

The seminal case on prosecutorial immunity is *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), in

---

1. The district court also concluded that Geter had alleged certain claims against the governmental entities concerning which he was entitled to conduct preliminary discovery with re-

spect to the existence and scope of policymaking authority. The parties concede that issues of municipal liability are not yet ripe for appellate review.

which the Supreme Court held that prosecutors are cloaked with absolute immunity for actions taken in initiating a prosecution and in presenting the state's case. *Id.* at 431, 96 S.Ct. at 995. The Court's holding was premised on "concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." *Id.* at 423, 96 S.Ct. at 991. A prosecutor's absolute immunity extends to activities "intimately associated with the judicial phase of the criminal process," but the Court expressly left unanswered the question whether policies that mandate absolute immunity extend to activities more akin to those of an administrative or investigative officer, rather than to those of an advocate. *Id.* at 430–31, 96 S.Ct. at 995. We answered that question in *Marrero v. City of Hialeah,* 625 F.2d 499 (5th Cir.1980), observing that the Supreme Court in *Imbler* had focused its inquiry on the functional nature of the prosecutor's activities rather than on the prosecutor's status. Consequently, we held that "a prosecutor is not entitled to absolute immunity when he engages in activities outside his quasi-judicial role." *Id.* at 510.[2] A prosecutor who acts in a non-advocate role, but nevertheless within his discretionary authority, is entitled to qualified immunity, however. *Id.* at 504–10.

Police officers, by contrast, are entitled only to qualified immunity. *See Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986); *Austin,* 830 F.2d at 1359. They were not accorded absolute immunity at common law. Furthermore, as a matter of public policy, qualified immunity provides ample protection to all police officers except those who are plainly incompetent or who knowingly violate the law. *Malley,* 106 S.Ct. at 1096.

■ We have consistently held that plaintiffs who invoke § 1983 must plead specific facts that, if proved, would overcome the individual defendant's immunity defense; complaints containing conclusory allegations, absent reference to material facts, will not survive motions to dismiss. *Elliott v. Perez,* 751 F.2d 1472, 1479 and n. 20 (5th Cir.1985). In cases where government officials assert absolute or qualified immunity, we have concluded that "allowing broadly worded complaints ... which leaves to traditional pretrial depositions, interrogatories, and requests for admission the development of the real facts underlying the claim, effectively eviscerates important functions and protections of official immunity." *Id.* at 1476.[3]

■ Further, plaintiffs must demonstrate prior to discovery that their allegations are sufficiently fact-specific to remove the cloak of protection afforded by an immunity defense. The Court made this point clearly in *Anderson v. Creighton,* —— U.S. ——, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987):

> One of the purposes of the *Harlow* qualified immunity standard is to protect public officials from the "broad-ranging discovery" that can be "peculiarly disruptive of effective government." For this reason, we have emphasized that qualified immunity questions should be resolved at the earliest possible stage of a litigation. Thus, on remand, it should first be determined whether the actions the Creightons allege [FBI agent] Anderson to have taken are actions that a reasonable officer could have believed lawful. If they are, then Anderson is entitled to dismissal prior to discovery. If they are not, and if the actions Anderson claims he took are different from those the Creightons allege (and are actions that a reasonable officer could have believed lawful), then dis-

---

**2.** The plaintiffs charged in *Marrero* that the prosecutors had engaged in an unconstitutional search and seizure with police officers.

**3.** To mitigate the harshness of these pleading requirements and to balance the right of state officials to be free from frivolous suits and the right of complainants to be fairly heard, we have declined to dismiss an inartfully drafted complaint unless we have concluded that the plaintiff has had an opportunity to plead his best case. *Jacquez v. Procunier,* 801 F.2d 789, 792–93 (5th Cir.1986).

covery may be necessary before Anderson's motion for summary judgment on qualified immunity grounds can be resolved. Of course, any such discovery should be tailored specifically to the question of Anderson's qualified immunity.

107 S.Ct. at 3042–43 n. 6 (citations omitted); *see also Mitchell v. Forsyth,* 472 U.S. 511, 527, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985); *Jacquez v. Procunier,* 801 F.2d 789, 791 (5th Cir.1986). Where a plaintiff's pleadings assert facts which, if proven, would defeat a qualified immunity defense, limited discovery may be permitted tailored to the issue of qualified immunity. *See Lion Boulos,* 834 F.2d at 509 (limited discovery permitted where "Boulos's pleadings and affidavit do state facts which could defeat Wilson's qualified immunity defense").

### A. *Prosecutors Wade and Isenberg*

■ The district court denied Wade's and Isenberg's official immunity without prejudice pending further discovery on two claims:

(1) the alleged setting of Geter's case for trial with only two weekdays' notice to Geter's counsel, together with the other circumstances alleged concerning his lack of preparation and the reasons for that lack;

(2) the alleged defamation of Geter, to the extent that such defamation may have been beyond the scope of the individuals' duties or was done for the purpose of covering up various defendants' misconduct in Geter's case.

Although the district court did not expressly so state, it appears that only Isenberg was involved in the first claim.[4] Geter alleged in his complaint that "the short notice of trial was the result of Defendant prosecutor's improper influence upon, or direction to the Court's administration to set Geter's case for trial on October 18,

1982[.]" Appellee argues that the affidavit of his court-appointed counsel, Edwin Sigel, provides factual proof sufficient to defeat a motion for summary judgment. In his affidavit, Sigel states that he was appointed to represent Geter on September 28, 1982. Based on discussions with Isenberg, he did not believe that the matter would be scheduled for trial at any time soon, if ever, because Isenberg led him to believe that evidence against Geter was so overwhelming that Sigel should encourage Geter to plea bargain or plead guilty. Geter adamantly refused to do either. Sigel thereafter was informed by Isenberg on October 14, 1982, that the case was scheduled for trial beginning four days later.

We are unable to construe any statements in Sigel's affidavit as even suggesting a genuine and material factual issue as to whether Isenberg in any way improperly influenced the setting of the trial date. The district court therefore should have granted appellants' motion for summary judgment on this allegation. The teaching of *Celotex v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), foreshadowed by our Circuit's decision in *Fontenot v. Upjohn,* 780 F.2d 1190 (5th Cir.1986), is that a plaintiff must come forward with evidence that establishes genuine issues of material fact in order to properly rebut a defendant's summary judgment motion. Because appellee could not establish a fact issue concerning a violation of his rights, appellants' assertion of immunity from suit should have been honored by the trial court.

Summary judgment was additionally warranted because even if Isenberg improperly influenced the setting of Geter's trial, his action was taken in the course and scope of a prosecution and must be shielded by absolute immunity. As *Imbler* held, rejecting a damage claim based on a prosecutor's alleged solicitation of false testimony, absolute immunity is warranted to the

---

**4.** Geter apparently agrees. *See* Appellee's Opening Brief at 10–11 (recitation of alleged facts surrounding setting of trial date makes no reference to Wade); at 22 ("Sigel's affidavit is clearly the source of the allegations regarding Isenberg's interference with Geter's attorney and the setting of his trial."); at 31–33 (discussion of whether Wade or Isenberg are entitled to absolute or qualified immunity makes no reference to Wade in conjunction with alleged interference in setting trial date).

extent prosecutors play an integral role in the judicial process by "deciding which suits to bring and [by] conducting them in court." 424 U.S. at 424, 96 S.Ct. at 992. Our court has consistently interpreted *Imbler* to prevent damage claims that arise during the course of prosecutions. *See, e.g., McGruder v. Necaise,* 733 F.2d 1146 (5th Cir.1984) (decision not to prosecute protected by immunity doctrine even where motivated by reprehensible and abhorrent reasons); *McCoy v. Gordon,* 709 F.2d 1060 (5th Cir.1983) (presentation of perjured testimony at trial held protected by the immunity doctrine); *Cook v. Houston Post,* 616 F.2d 791 (5th Cir.1979); *Bruce v. Wade,* 537 F.2d 850 (5th Cir.1976) (decision to pursue indictment and presentation of witnesses and documentary evidence at trial and at challenges to conviction protected by the immunity doctrine). *Cf. Marrero,* 625 F.2d at 499.

Geter cannot avoid the immunity defense merely by contending that because the trial setting of criminal cases is committed by Texas law to the court, Tex.Code Crim.Pro. Ann. art. 33.08, it is thus *ipso facto* outside the scope of Isenberg's prosecutorial role. If we parse the activities of a prosecutor incident to the bringing and trial of a case so closely, the cloak of immunity would be tattered. There is no principled way to distinguish this conduct from other actions in the course of a prosecution that have previously been held absolutely immune. To accept Geter's rationale would conflict with *Imbler*'s holding that "in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983." 424 U.S. at 431, 96 S.Ct. 995 (footnote omitted).

As to the defamation claim, Geter alleged in his amended complaint:

160. Further pleading and in support of Plaintiff Geter's state pendent claim of defamation, Plaintiff Geter avers that Defendant prosecutors Henry Wade, Carden and Isenberg, however, have continued to publicly claim Plaintiff Geter guilty of crimes in their efforts to defame Plaintiffs and to cover-up and conceal the evident prosecutorial misconduct, perjury, false identifications, police conspiracy and miscarriage of justice.

161. Defendant prosecutors have maliciously and falsely stated and maintained Plaintiff Geter's guilt in the public media, by characterizing and defaming Plaintiff Geter as guilty and as being a "Jekyll and Hyde" personality.

162. More specifically, Defendant Wade was quoted in the August 18, 1985 edition of the *Dallas Morning News* as saying,

"the press proved him [Geter] innocent whether he was innocent or not. I still in my own heart feel like he was guilty. But my decision wasn't based on whether he was guilty or whether he was innocent. My decision was what was best for the criminal justice system ... what's one man when you are talking about a whole system."

He also answered certain interrogatories concerning Wade's alleged wrongdoing as follows:

[# 1] During the course of prosecution of plaintiff Geter, defendant Wade and his agents used the public media to defame plaintiff and to declare him guilty in an effort to deny him his presumption of innocence (while awaiting retrial) and/or to cover up the negligence and/or constitutional violations that caused his conviction and severe sentence.

\* \* \* \* \* \*

[# 2] In count three, it is alleged that defendant Wade and his agents engaged in a conspiracy to conceal and cover-up the police and prosecutorial misconduct involved in plaintiff Geter's conviction by defaming plaintiff Geter and his supporters in the public media[.]

\* \* \* \* \* \*

[# 3] [A]fter the acquittal of Anthony Williams, defendant Wade again stated that he had no plans to review appellant Geter's case (*Dallas Times Herald,* November 9, 1983) and would not agree to review or reinvestigate the latter's case at the request of plaintiff's attorney, Edwin Sigel.

\* \* \* \* \* \*

[# 4] [D]ue solely to the adverse publicity of the "60 minutes" program [aired in December 1983], defendant Wade agreed with plaintiff['s] attorney, Edwin Sigel, to join the defense in a motion for a new trial "to improve the perception of the public in our Criminal Justice System ..." (*Dallas Morning News*, December 13, 1983). However, he restated his belief that Geter was guilty.

\*     \*     \*     \*     \*     \*

[# 5] [O]n December 15, 1983, defendant Wade announced publicly that his office would aggressively prosecute Geter and assigned two deputy prosecutors and investigators to conduct an intensive reinvestigation. Defendant Wade also indicated that plaintiff's refusal to take the polygraph test by his policeman indicated plaintiff would fail (because he was guilty).

\*     \*     \*     \*     \*     \*

[# 6] [O]n or about December 20, 1983, defendant Wade stated publicly that he did not believe the [TDC] inmate [who had confessed to crimes charged to Geter] had anything to do with the crimes plaintiff Geter was accused of.

\*     \*     \*     \*     \*     \*

[# 7] Defendant Wade and his agents have defended the prosecution in the public media, commended the defendant police officers in their conduct, and have maintained his belief that plaintiff is yet guilty and has stated so publicly since plaintiff's exoneration.

Paragraph 160 and statements # 1, # 2, and # 7 are conclusory allegations void of the particular offending remarks necessary to sustain a defamation charge.[5] *Cf. Ritzmann v. Weekly World News, Inc.*, 614 F.Supp. 1336 (N.D.Tex.1985). Paragraph 161 refers to the alleged defamatory nature of a particular statement, but the only reference in the record to Geter's alleged Jekyll-and-Hyde personality was a statement in an August 1983 issue of "People

Magazine" attributed not to Wade or Isenberg, but to prosecutor Kenneth Carden.[6]

Paragraph 162 and statements # 3, # 4, # 5, and # 6 set out Wade's allegedly offending comments, or at least their substance and meaning. Although we need not reach the issue, it seems unlikely that these comments, being merely expressions of Wade's opinion of Geter's guilt or factual statements of the status of the prosecution, and having been delivered in an official capacity, are actionable even as a matter of tort law. Texas law authorized Wade to issue statements to the press relating to criminal prosecutions in order to keep the public informed. Tex.Code Crim. Pro.Ann. art. 2.03(b). Further, our court has recognized a prosecutor's obligation to communicate with the public and has held that public comments by a prosecutor are entitled at least to a qualified immunity defense. *See Marrero*, 625 F.2d at 511.

■ There is a more basic defect in the defamation claim, however, which the district court may have overlooked. A plaintiff can successfully invoke § 1983 only when his federal statutory or constitutional rights have been violated. Invasion of an interest in reputation alone is insufficient to establish § 1983 liability because a damaged reputation, apart from injury to a more tangible interest such as loss of employment, does not implicate any "liberty" or "property" rights sufficient to invoke due process. *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Cook*, 616 F.2d at 794–95 ("Appellants' interest with reputation, false arrest, malicious prosecution, libel and slander are matters which the state protects by virtue of its tort law.... Having been deprived of no rights secured under the Constitution, appellants have no claim cognizable under § 1983."); *Thomas v. Kippermann*, 846 F.2d 1009, 1010–11 (5th Cir.1988). In *Marrero*, we held that "[s]ince the defamation alleged here occurred in connection with the alleged violation of appel-

---

5. Isenberg is mentioned only summarily in paragraph 160. The district court should have granted summary judgment to Isenberg on this charge.

6. Carden was not served by plaintiffs and accordingly has not appeared in this suit.

lants' fourth amendment rights, the injury to appellants' personal and business reputations constitutes the deprivation of liberty interests." [7] 625 F.2d at 519. Despite the grievous error of a misplaced prosecution, appellee did not lose his employment. Nor has Geter suffered an injury to his personal reputation *plus* an additional injury that, together with the alleged defamation, might amount to a constitutional deprivation, for his other causes of action against the prosecutors have been dismissed. Therefore, even assuming that Wade cannot claim immunity and that his statements are defamatory as a matter of tort law, the district court should have granted summary judgment because Geter has failed to show a colorable violation of a "more tangible" interest in connection with the defamation.

Geter contends alternatively that, given the opportunity to conduct discovery against the Dallas County defendants, he will alleviate any technical deficiencies in his claims as currently pled. We disagree. He does not intimate any new or different claims but only that he might discover additional facts to make his pleaded claims more specific. Additional discovery, however, will not avail Geter's claims against Wade and Isenberg. In each of these cases, as our discussion demonstrates, even if Geter's allegations are factually correct, these defendants are entitled to absolute or qualified immunity or dismissal as a matter of law. Logically, further discovery cannot enhance Geter's contention that Isenberg manipulated his trial setting, because any such action was taken, both chronologically and functionally, in the course of his duties as a prosecutor. Likewise, the tort of defamation is not actionable under § 1983 against Wade if, as is the case here, Geter has been unable to connect the defamation to another injury so as to state a § 1983 violation.[8] Allowing Geter further discovery would amount to condoning a fishing expedition and would undermine the policies behind the immunity defense. Moreover, the record does not sustain the contention that Geter was thwarted in his attempt to conduct discovery against Wade, because he never sought any pertinent discovery[9] and the Dallas County defendants never moved to limit such discovery during the eighteen-month pendency of the lawsuit.

7. Contrary to appellants' argument, the fact that Wade's comments were made *after* Geter was arrested and convicted would not alone excuse liability, for as we also held in *Marrero:*

> [I]t is now apparent that the defamatory communication need not *cause* the loss of the protected right, or more tangible interest, in order to satisfy the stigma-plus requirement of *Paul.* Instead, it is sufficient that the defamation occur in connection with, and be reasonably related to, the alteration of the right or interest.

625 F.2d at 519 (emphasis in original).

8. The district court deferred ruling on Wade's and Isenberg's summary judgment motions and held Geter was entitled to conduct further discovery on the "scope of the individual defendants' duties," under the aegis of *Austin Municipal Securities, Inc. v. Nat'l Ass'n of Securities Dealers, Inc.,* 757 F.2d 676, 688 (5th Cir.1985). We find that case distinguishable because, as it states, it considers as a question of first impression the scope of immunity available to employees of a *private* organization charged with enforcement of securities regulations. The nature of their duties must be subjected to some discovery based on the novelty of this issue and obvious uncertainty concerning their precise functions. Prosecutors Wade and Isenberg, on the other hand, are the garden-variety district attorney and assistant whose authority to bring and pursue criminal charges, *cf. Imbler,* in the case before us needs no hair-splitting factual development prior to determination of their immunity defenses.

9. Not until August 21, 1986, did Geter make his initial discovery request: to permit entry upon the premises of the Dallas County jail "for the purposes of inspection, measuring, [and] photographing the detention areas utilized by Defendant for the incarceration" of Geter. Defendants requested a protective order "excusing them from responding to the Plaintiffs' discovery requests" on September 17, 1986. The district judge referred the requests to a magistrate on September 17, 1986, who thereafter issued the requested protective order.

Later, Geter discovered an electronic surveillance device in his house, and on April 16, 1987, he filed a motion seeking a general order requiring all defendants to submit to his discovery demands. The magistrate denied Geter's motion for discovery concerning the electronic surveillance of Geter's house after finding no factual allegations or evidence of the defendants' involvement in the surveillance.

### B. *Officer Kuhn*

In denying officer Kuhn's motion for summary judgment, the district court wrote:

> As to Defendant Kuhn, the motion is DENIED with respect to Plaintiffs' allegations that, in connection with the investigation and prosecution of Plaintiff Geter, Kuhn elicited false identifications by unlawful means, testified falsely, and deliberately concealed exculpatory evidence. The Court considers that these allegations are sufficient to overcome the qualified immunity otherwise available to Kuhn as a police officer.

■ We quickly dispose of the charge of giving false testimony by noting that witnesses are cloaked with absolute immunity. *Briscoe v. LaHue*, 460 U.S. 325, 335, 103 S.Ct. 1108, 1115, 75 L.Ed.2d 96 (1983); *Austin*, 830 F.2d at 1360. This immunity does not disappear if the witness is a law enforcement official, even if that official's usual level of immunity is only qualified. Immunity is the product of function, not status. *Marrero*, 625 F.2d at 504–05.

As to the charges that Kuhn elicited false identifications by unlawful means and deliberately concealed exculpatory evidence, Geter alleged in his amended complaint:

> 60. On information and belief, on or about August 26, 1982, the Garland Police defendants passed photos of Plaintiff Geter and Williams to Defendant D.C. Kuhn of Defendant Balch Springs, Texas Police Department, who also agreed to the conspiratorial investigation of Plaintiffs, resulting in the false identification of Plaintiffs Geter and Williams, and the wrongful prosecution and conviction of Plaintiff Geter for a robbery of a Kentucky Fried Chicken outlet in that City on August 23, 1982.
>
> 61. On information and belief, Defendants Fortenberry, Cochran, Wheatley, Martinkus and Kuhn continued to distribute and to display the photographs of Plaintiffs to witnesses and victims of armed robberies throughout Dallas County and adjacent counties, even after the arrests of Plaintiffs Geter, Williams

and McCullough, in an effort to obtain more false identifications of the Plaintiffs and their prosecution for the same.

> \* \* \* \* \* \*
>
> 63. On information and belief, numerous unsolved armed robberies were attributed to and assigned to Plaintiffs Geter and Williams by various law enforcement agencies in several Texas jurisdictions, even though no evidence connecting them with such crimes existed except the false and erroneous identifications referred to hereinabove and concerning false allegations of Defendants Fortenberry, Wheatley, Martinkus, Cochran and Kuhn.
>
> \* \* \* \* \* \*
>
> 67. Defendant police officers without justification, sufficient legal cause and with an abuse of authority, improperly obtained confidential and privileged photographs and personal information from state agencies, employers, and others and displayed and disseminated the same in an effort to obtain false and fraudulent identifications which could be used to sustain false arrest, false imprisonment, and malicious prosecution of Plaintiffs.
>
> \* \* \* \* \* \*
>
> 84. On information and belief, Defendants Pat Martinkus and D.C. Kuhn testified falsely as to witness identification of Plaintiff Geter, affirmatively denied and concealed the existence of exculpatory evidence and falsely labeled Plaintiff Geter as a suspect in numerous aggravated robberies throughout the region.
>
> \* \* \* \* \* \*
>
> 127. In furtherance of the conspiracy, Defendants, by omission and/or commission, engaged in the following overt acts, among others, all committed under color of law and with knowledge that the prosecutions of Plaintiffs were wholly unfounded:
>
> \* \* \* \* \* \*
>
> (g) Defendants Fortenberry, Kuhn, Wheatley, and Martinkus obtained false and fraudulent photographic identifica-

tions of Plaintiffs Geter and Williams by improper and unconstitutional means and attempted to obtain other false identifications.

(h) Defendants Fortenberry, Cochran, Kuhn, Wheatley, and Martinkus executed false affidavits and/or investigative reports to use as a basis for false arrest and prosecutions.

\* \* \* \* \* \*

(*l*) Defendants Fortenberry, Wheatley, Martinkus, and Kuhn ignored, suppressed, and concealed exculpatory evidence that would contradict or undermine the false and fraudulent identification of Plaintiffs and/or would reveal the groundless prosecutions lacking probable cause.

■■■■ We agree with Geter that a police officer cannot avail himself of a qualified immunity defense if he procures false identification by unlawful means or deliberately conceals exculpatory evidence, for such activity violates clearly established constitutional principles. *See Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed. 2d 140 (1977); *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Geter's charges in his federal pleadings against Kuhn are, however, conclusory assertions without the leaven of confirming factual details. For example, Geter's complaint never states who gave the false identifications, what "unlawful means" were used to procure the identifications, or what exculpatory evidence Kuhn suppressed and concealed. Absent any such information in the pleadings, we would normally order the district court to grant Kuhn's motion to dismiss or for summary judgment, if we were to conclude that Geter has had the opportunity to plead his best case. *See Elliott,* 751 F.2d at 1479 and n. 20 (In order to· survive a motion to dismiss a claimant must state specific facts, not conclusory allegations."); *Jacquez,* 801 F.2d at 791 (Plaintiff must "plead facts with particularity before they may subject public officials to trial *or* the vagaries of modern pretrial discovery.").

In searching the entire record for "specific facts" which would, if proven at trial,

defeat Kuhn's immunity defense, we note the following "allegations" in Geter's pleadings in the trial court following his conviction:

■ New evidence material to the defense has been discovered and has become available since the trial and hearing on Defendant's motion for a new trial, to-wit: ... (c) The existence of two additional photo lineups that were shown to state identification witnesses, but wherein Defendant was not identified by these witnesses. Such evidence supports Defendant's claim that there were prior suggestive photo lineups (unknown to Defendant's counsel at time of trial) which tainted the photo identification process[.]

■ Defendant believes that his photograph was shown to alleged victims of and witnesses to numerous robberies by law enforcement authorities in a manner which made his eventual selection as a suspect inevitable in violation of the equal protection clause and due process requirements of the United States Constitution.

Defendant, further, believes that after his photograph was selected the identification of Defendant by the witness or witnesses was bolstered by law enforcement authorities who supplied the witness with false and misleading information in a manner which tainted the entire identification process in violation of the due process clause of the Fourteenth Amendment to the United States Constitution.

Defendant asserts the right to examine all of the witnesses to the entire identification process which caused Defendant's selection out of the presence of the jury and in advance of trial to determine if this prior identification proceeding was conducted in a manner that was impermissibly suggestive and likely to lead to irreparable misidentification at trial or was otherwise in violation of Defendant's right to due process.

■ The requested evidence is favorable, and exculpatory as it would permit Defendant to demonstrate to the jury

among other things, the following: ... 2. That Defendant's identification in the instant cause is in all likelihood a mistaken identification due to his facial similarity to other persons and/or overzealous police investigatory techniques.

■ The photographic identifications were suggestive and inclusive.

■ Even though Lenell Geter was under investigation and the scrutiny of the police prior to the occurrence of the crimes for which he was charged, the prosecuting agencies have been unable to support their charges except through alleged photo and lineup identifications, the attendant circumstances of which were suggestive.

■ Defendant has reason to believe and does believe that eyewitnesses to the offense charged herein provided positive in-court identification testimony only after repeated viewings of Defendant's photograph and extensive pre-trial witness preparation and that their identification was initially only tentative in nature, and by reason of improper suggestion or active coercion, such testimony became positive in nature.

■ On information and belief, the State has seven eyewitnesses who have allegedly identified the Defendant and connected him with at least three aggravated robberies. Of the seven, six witnesses viewed one or more photo lineups that included a picture of the Defendant and his roommate and made "tentative" or firm identification.

It is averred that the photo lineups were suggestive and/or defective and the identifications—tentative or otherwise—were unreliable under the circumstances of this case.[10]

These statements make clear what Geter alleged in only conclusory fashion in his federal pleadings: he claims officer Kuhn

utilized the above-enumerated improperly suggestive tactics in obtaining eyewitness identifications. The statements also contain sufficient facts that, if proven at trial, would defeat Kuhn's immunity defense. We therefore are confronted with a dispute not unlike that in *Lion Boulos.* There the dispute concerned an allegedly illegal EPA search of gas stations and seizure of gasoline samples during an investigation. The defendants asserted, *inter alia,* that they had obtained consent to their actions (thus avoiding the warrant requirement), whereas plaintiff's pleadings and affidavits called into question whether consent, if given, had been coerced. Because seizure of gasoline samples and delivery records without warrants or voluntary consent would violate clearly established law (and thus frustrate an immunity defense), we dismissed the EPA's appeal of the district court's order permitting limited discovery on the consent issue. Without such discovery, and resolution of the factual dispute, the district court could not rule on the defendants' immunity claim.

As in *Lion Boulos,* we have a factual dispute: Geter alleges that Kuhn utilized certain specific, improper tactics in procuring eyewitness identifications, and Kuhn swears that at all times he acted properly. Because Kuhn would violate clearly established law by procuring identifications by improper means, neither we nor the district court can rule on his immunity defense until the factual dispute concerning his identification tactics is resolved. We therefore dismiss the appeal as to Officer Kuhn, pending discovery *limited to resolution of this factual dispute. See Anderson v. Creighton,* 107 S.Ct. at 3042 n. 6. If, after such discovery is concluded, the trial court decides that Kuhn did not violate clearly established law while obtaining eyewitness

---

10. These statements are quoted from: [1]—Motion for New Trial (filed September 16, 1983); [2]—Motion for Identification Hearing (filing date unclear); [3]—Motion for Disclosure of Favorable Evidence (filing date unclear); [4]—Defendant's Motion for Identification Hearing and for Suppression of Lineup and Photographic Identifications (filed January 30, 1984); [5]—Attorney's Affidavit in Support of Defendant's

Motion to Dismiss in the Interest of Justice (dated January 30, 1984); [6]—Application for Depositions (filing date unclear) (similar statements were made in subsequently filed Motion to Restrict State's Access to Identification Witness); [7] Motion to Permit Expert Testimony on the Reliability of Eyewitness Identification and Police Lineups (filed February 13, 1984).

identifications, then Kuhn is entitled to his immunity defense and the court may yet grant his motion to dismiss or for summary judgment.

For the foregoing reasons, we RE-VERSE the district court's denial of immunity to defendants Wade and Isenberg, DISMISS the appeal with respect to officer Kuhn, and REMAND for judgment in favor of Wade and Isenberg and further proceedings in accordance herewith.