**Milan KNOX, Plaintiff,**

v.

**Jimmy GENISON, Defendant.[1]**

**No. 88 C 374.**

United States District Court,
N.D. Illinois, E.D.

Nov. 1, 1989.

Robert J. Kopka, Andrew D. Ellbogen, Landau, Omahana & Kopka, Ltd., Chicago, Ill., for plaintiff.

Mathias W. Delort, Odelson & Sterk, Ltd., Evergreen Park, Ill., for defendant.

### MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Milan Knox ("Knox") sues Village of Robbins police officer Jimmy Ganison ("Ganison") in this 42 U.S.C. § 1983 ("Section 1983") action, charging that Ganison suborned perjured testimony that caused Knox to be convicted of attempted murder, armed violence based on attempted murder and unlawful use of weapons. Ganison has now moved for summary judgment under Fed.R.Civ.P. ("Rule") 56. For the reasons stated in this memorandum opinion and order, Ganison's motion is denied.

### Facts [2]

On June 25, 1982 Garland Blackman ("Blackman")—and not Knox—fired four

---

**1.** Though this was the spelling used in the original Complaint and therefore controls the case caption, it turns out the name is really spelled "Ganison." Accordingly the text of this opinion employs the correct name rather than following the initial misnomer.

**2.** Familiar Rule 56 principles impose on the movant the burden of establishing the lack of a genuine issue of material fact (*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)). For that purpose this Court is called on to draw all "reasonable inferences, not every conceivable infer-

or five shots out of a moving automobile in Robbins, Illinois, wounding Jerome Williams ("Williams") (Blackman Aff., P.Ex. A).[3] Blackman later confessed to Ganison that he had done so (Knox Aff., P.Ex. B). Despite that knowledge, Ganison told Williams to testify that it was *Knox* who shot him.[4] Ganison held out, as an inducement to Williams to perjure himself, that Ganison would see to it that different criminal charges pending against Williams would be dismissed (Affs. of Paul Knox, P.Ex. C; Steven Anderson, P.Ex. G; Daris Ratliff, P.Ex. H; Frank Toles, P.Ex. I; and Ralph Hudson, P.Ex. J).

Williams proceeded to give that perjured testimony at Knox's bench trial, and Knox was convicted. Knox's two post-conviction efforts proved unavailing:

1. His conviction was affirmed on direct appeal (D. Ex. 4).

2. His post-conviction petition was denied without an evidentiary hearing, and that denial was also affirmed on appeal (D. Ex. 5).

However, none of the state courts was ever presented with the assertion made in this case—that Ganison had suborned Williams' false testimony.

### Factual Disputes

One of Ganison's three arguments on the current motion should never had been made—he asserts the absence of any genuine issue of material fact. That is really arrant nonsense, given the existence of the affidavits supporting Knox's story as reflected in the "Facts" section of this opinion (see n. 2).

It may well be that at trial a jury will accept Ganison's word over those of the affiants, as his lawyer now asks this Court to do. But the jury may equally well choose to believe those affiants as witnesses rather than Ganison. It is really unpardonable for counsel to waste the time of this Court and opposing counsel by advancing such an untenable argument in the face of established Rule 56 jurisprudence (again see n. 2).

### Absolute Immunity

■ *Heidelberg v. Hammer*, 577 F.2d 429, 432 (7th Cir.1978) found a police officer's subornation of perjured testimony actionable under Section 1983. Ganison contends that holding has been overtaken by *Briscoe v. LaHue*, 460 U.S. 325, 341–46, 103 S.Ct. 1108, 1118–21, 75 L.Ed.2d 96 (1983), which granted absolute immunity to a police officer for *his own* perjured testimony. Ganison also points to *Imbler v. Pachtman*, 424 U.S. 409, 424–31, 96 S.Ct. 984, 992–96, 47 L.Ed.2d 128 (1976), which held a *prosecutor* immune from Section 1983 liability for the knowing use of perjured testimony.

But Ganison's analysis is flawed. Absolute immunity is given to witnesses (even including law enforcement officers) for their false testimony, not because the law wishes to encourage such conduct but because of the policy reasons stated in *Briscoe*. Absolute immunity is similarly given to prosecutors (even where they knowingly abuse their power by eliciting false testimony), not because the law wishes to encourage such conduct but because of the policy reasons stated in *Imbler*.

But the policy that reaches out to protect the undeserving police-officer-witness does not extend to insulating the officer who poisons the well of justice by causing *someone else* to testify falsely, nor does the

---

ence" in the light most favorable to the nonmovant—in this case Knox (*DeValk Lincoln Mercury, Inc. v. Ford Motor Co.,* 811 F.2d 326, 329 (7th Cir.1987)). For purposes of the current motion, then, Knox's tendered evidence is accepted as true.

**3.** In addition to Blackman's own affidavit, Knox submits a series of other affidavits to the same effect by an eyewitness to the shooting (the driver of the automobile, Leonard Riley, P.Ex. F) and persons who later heard Blackman admit the shooting to Knox's trial lawyer (Howard Knox, P.Ex. D; Karla Alexander, P.Ex. E).

**4.** When the shots were fired, Knox was sitting in the front seat of the car on the passenger side, while Blackman was sitting in the back seat. It is undisputed that the shots were fired out of the car's side window adjacent to the back seat (the window next to Knox's seat was closed at the time, so the shots could not have been fired out of that window).

policy that reaches out to protect the undeserving sleazy prosecutor because of his or her position *as* prosecutor cloak with immunity a police officer who has engaged in the same outrageous conduct. *Geter v. Fortenberry,* 849 F.2d 1550, 1552–53 (5th Cir. 1988) (emphasis added, citing the post-*Imbler* and post-*Briscoe* decision in *Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)) properly contrasts the *Imbler*-directed absolute immunity for prosecutors engaged in their prosecutorial functions with the merely "qualified immunity [that] provides ample protection to all police officers *except those* who are plainly incompetent or *who knowingly violate the law.*" And *Malley,* 475 U.S. at 342–43, 106 S.Ct. at 1096–1097 makes precisely the same point about the inherent limitations on the policies underlying *Imbler* and *Briscoe* that this Court has made in the preceding paragraph of the text.

Accordingly *Geter,* 849 F.2d at 1558 held an officer absolutely immune under *Briscoe* for *his own* false testimony but then went on (*id.* at 1559, citing *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977)) to reject any such immunity notions for conduct such as that committed by Ganison here:[5]

> We agree … that a police officer cannot avail himself of a qualified immunity defense if he procures false identification by unlawful means …, for such activity violates clearly established constitutional principles.

Indeed, a later interlocutory appeal in *Geter* (decided while the current motion was in the briefing stage) has reconfirmed the identical principle (882 F.2d 167 (5th Cir.1989)). That second *Geter* decision confirms the Section 1983 liability of still another officer for "procur[ing] false identification by unlawful means" (from which an officer's subornation of perjury would be actionable a fortiori), even while insulating

that same officer under *Briscoe* for his own false testimony.

Accordingly this Court finds the *Heidelberg–Geter* principle is still good law. No absolute immunity attaches to Ganison.

### Issue Preclusion

■ Finally Ganison urges "collateral estoppel" (more accurately issue preclusion, see *Migra v. Warren City School District Board of Education,* 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984)) operates to foreclose Knox's claim. Ganison Mem. 9 says the "previous adverse disposition of the identical claims in state court" prevents Knox from bringing this cause of action.

That contention mischaracterizes what took place in the several state court proceedings. Admittedly Ganison was a key occurrence witness to the shooting (though he could not identify who actually fired the shots from the darkened car shortly after midnight), and his testimony coupled with that of Williams provided the circumstantial identification of Knox as the shooter. And true enough, Ganison testified on the prosecutor's direct examination that he did not tell Williams to say Knox had done the shooting. But there was not a word during the trial to suggest that Ganison had solicited Williams' false testimony.[6]

Not surprisingly, the opinion in the direct appeal (necessarily limited by the trial record) contained no hint of the claim now at issue (D. Ex. 4). "Newly-discovered evidence" as to Blackman having done the shooting, sought to be advanced by Knox's appellate counsel, was not considered by the Appellate Court on that appeal. In any event, that newly-discovered evidence again did not include the asserted subornation that is the crux of the present case. Lastly, Knox's invocation of a post-conviction proceeding was based on the allegedly ineffective assistance of his counsel, and not at

---

**5.** Once again, this Court must accept Ganison's subornation of perjury as established for current purposes.

**6.** On the contrary, during the argument on Knox's motion for a new trial after the judge had found him guilty, Knox's trial lawyer urged

Ganison's *credibility*—rather than the lack of it—in seeking to contrast aspects of Ganison's eyewitness testimony with that of Williams (Tr. 235–36). Clearly Knox's trial counsel was not there challenging Ganison as a suborner of perjury.

all on the subornation-of-perjury matter now at issue.

In summary, the situation on this aspect of Ganison's contentions is legally equivalent to that dealt with by our Court of Appeals in *Smith v. Springer*, 859 F.2d 31, 33–35 (7th Cir.1988). Again Ganison's argument must be rejected.

### Conclusion

None of Ganison's arguments in support of his Rule 56 motion is persuasive. There are certainly material facts in dispute, and no legal doctrine insulates Ganison from Section 1983 liability. This case must go to trial, and a status hearing is set for 9 a.m. November 15, 1989 to discuss what further pretrial activity is required to that end.