Patrick N. JACKSON, Plaintiff,

v.

JACKSON COUNTY, MISSISSIPPI; D.B. "Pete" Pope, Individually, and in his official capacity as Sheriff for Jackson County; State of Mississippi, by and through the District Attorney for the Nineteenth (19th) Judicial District; Dale Harkey, Individually and in his official capacity as District Attorney for the Nineteenth (19th) Judicial District; Billy Bryant, Deputy Sheriff for Jackson County, in his individual and official capacity; Kimberly Starks, Ex Officio, in her individual and official capacity as Assistant District Attorney; Board of Supervisors of Jackson County, Missis-sippi, being Charles R. Moseley, Robert Norvel, Michael L. Pol, Sharon Landry and Carroll L. Clifford, III; United States Fidelity and Guaranty Company, A Corporation; John Does I through X, Defendants.

Civil Action No. 1:95–cv–119–GR.

United States District Court,
S.D. Mississippi,
Southern Division.

Oct. 10, 1995.

James Keith Roberts, Biloxi, MS, for Patrick N. Jackson.

Gary S. Evans, Jackson County Bd. of Supervisors, Pascagoula, MS, for Jackson County, MS, D. B. Pope, Billy Bryant, Jackson County Bd. of Supervisors, U.S. Fidelity & Guar. Co.

John J. Fraiser, III, Office of the Atty. Gen., Jackson, MS, for State of MS.

## MEMORANDUM OPINION

GEX, District Judge.

This matter is before the Court on the motion to dismiss and amended motion to dismiss, or in the alternative, for summary judgment, filed by defendants Jackson County, Mississippi, Sheriff D.B. "Pete" Pope, Deputy Sheriff Billy Bryant, and United States Fidelity and Guaranty Company, Inc. [USF & G] [23–1, 39–1]. Also before the Court is the supplemental motion to dismiss and motion for summary judgment or to dismiss, filed by defendant State of Mississippi and defendants Dale Harkey and Kimberly Starks [27–1, 38–1], and the plaintiff's motion for continuance and for discovery [40–1]. After a review of the record, the briefs and arguments of counsel, and having been fully advised in the premises, the Court concludes, for reasons set forth below, that the defendants' motions should be granted and the plaintiff's motion should be denied.

### Statement of Facts

The instant lawsuit stems from events leading to Jackson's arrest, three-day detainment, and ultimate acquittal of charges that he kidnapped and committed rape and sexual battery on 16–year–old Aimee Lyn Broussard, a minor female, on November 15, 1992. Investigatory reports [1] indicate that, on the aforementioned date, Broussard was walking along Highway 90 at 8:30 P.M., near the Isle of Capri Casino, in Biloxi, Mississippi. *Id.* at Exhs. 3–5; County Defs.' Supp. Exhs. to Amend. Mot. to Dismiss or for Summ. J., Exh. 34 (Bryant's Aff.). At the hospital following the incident, Broussard recounted to defendant Billy Bryant, a detective assigned to the case, that she was approached by a man driving what appeared to be a gray Omni, further described as having, *inter alia,* white windshield wipers. County Defs.' Amend. Mot. to Dismiss or for Summ. J., Exhs. 3–5. The suspect, described by Broussard, *inter alia,* as a "chunky" 180–pound

---

1. The reports are attached to the county defendants' amended motion to dismiss or for summary judgment. *See* County Defs.' Amend. Mot. to Dismiss or for Summ. J., Exhs. 2–10, 18.

black male, 5' 8" or 5' 9", with short black hair squared off at the front and sides, asked Broussard if she wanted a ride. *Id.* When she declined, the suspect reportedly told her to get into the car and that he had a gun. *Id.* Broussard stated that she got into the suspect's car. While in the car, the suspect asked Broussard how old she was. She told him she was 16 and he told her, *inter alia,* that he was 21 and that he was on temporary duty [TDY] at Keesler Air Force Base [Keesler]. *See id.*

Broussard further detailed that the suspect eventually drove to "Blue Hole," a secluded area near Old Fort Bayou Road, where he stopped and began to kiss and fondle her. *Id.* When Broussard resisted, the suspect beat her. *Id.* She then attempted to flee, but was subdued, stripped, and forced to administer oral sex upon the suspect. The suspect then made her open a condom package and place it on his male organ, after which he tied her hands behind her with her pink brassiere and raped her. The suspect then reportedly abandoned her and drove away. Broussard explained that the encounter at Blue Hole lasted 15 to 20 minutes. *See id.*

Investigatory reports further indicate that, at 9:19 P.M., all officer was dispatched to Old Fort Bayou Road in response to reports that a naked female was walking in the area. *Id.* at Exh. 3. Authorities were later alerted that Broussard was at a residence in the area, whereupon an officer was dispatched to that address. *Id.* When Broussard related how she had been raped at Blue Hole, detective Bryant went to that area and found her pink brassiere, her right shoe, and an empty condom package. *Id.* at Exhs. 3, 5; County Defs.' Supp. Exhs. to Amend. Mot. to Dismiss or for Summ. J., Exh. 34 (Bryant's Aff.).[2] No other clothing was ever found. *See* County Defs.' Supp. Exhs. to Amend. Mot. to Dismiss or for Summ. J., Exh. 34 at 3. The next day, Bryant contacted Don Gall, a special agent at Keesler, advising him regarding the rape. County Defs.' Amend. Mot. to Dismiss or for Summ. J., Exh. 6. Gall

advised Bryant that he would check all TDY subjects and determine whether any of the vehicles there fit the description provided by Broussard. *Id.*

On November 17, 1992, two days after the rape, Broussard gave a description of the suspect that resulted in a composite sketch. *Id.* at Exhs. 5, 7, 7A. Bryant further reported that, on November 26, 1992, Broussard and her mother were driving east on Highway 90 when Broussard spotted the suspect's vehicle moving west. *Id.* at Exh. 5. Broussard's mother turned around, followed the vehicle, obtained the license plate number, and reported it to the Jackson County Sheriff's Department. *Id.* Detective Bryant checked the license plate number and found the name Patrick N. Jackson, living in Gautier, and described as a black male, 5' 11", 185 pounds. *Id.*

On December 2, 1992, Bryant contacted Jackson, who came to the station and told him, *inter alia,* that he worked with the TDY at Keesler, that he worked evenings, and that he frequently traveled on Highway 90 to and from work. *Id.* Bryant took a photograph of Jackson for a photographic line-up. *Id.* On December 3, 1992, Broussard came to the station, whereupon she was shown six photographs among which was that of Jackson. *Id.* Bryant attests that Broussard instantly pointed to the photograph of Jackson as the man who kidnapped and raped her. *Id.;* County Defs.' Supp. Exhs. to Amend. Mot. to Dismiss or for Summ. J., Exh. 34 at 5. Broussard repeatedly affirmed her positive identification, both to Bryant and to detective Thickston, the latter having worked on the composite sketch of the suspect. *See* County Defs.' Amend. Mot. to Dismiss or for Summ. J., Exh. 5. On December 4, 1992, a warrant was obtained and Jackson was arrested and given his *Miranda* rights. *Id.* On December 7, 1992, Jackson was released on bail. *Id.* at Exh. 21. Once evidence began to point toward Jackson, taped interviews were conducted with four of Jackson's co-workers. A report by detective E.C. Patrick, who subse-

---

2. Serological analysis failed to yield positive indicia of seminal fluid on the vaginal slides, swabs, the brazier, or the condom wrapper. *Id.* at Exh.

28. Analysts found blood on the condom wrapper, but there was an insufficient quantity to permit reliable test results. *Id.*

quently took over the investigation, read in part as follows:

All the subjects interviewed stated they saw Jackson at some point during the work shift. But Sgt. Nolan advised that he and Jackson worked together until Jackson clocked out and stayed around socializing after the shift ended. Sgt. Nolan stated he and Jackson had lunch together at the officers club sandwich shop[.] Nolan stated he paid for his lunch with a Keesler credit card and Jackson paid cash[.] A check of the charge accounts at the sandwich shop on 11–15–92 by special agent Gall did not reveal any credit card charges by Sgt. Nolan on 11–15–92.

*Id.* at Exh. 27.

On March 11, 1993, a preliminary hearing was held before Judge T. Larry Wilson of the County Court of Jackson County. *Id.* at Exh. 11. After the prosecution offered the testimony of detective Bryant, Jackson presented testimony by staff sergeant Mark Nolan, Jackson's supervisor, who testified that, on the night of the rape, Jackson had worked until 10:30 P.M. *Id.* at 23. Nolan testified that other individuals working around Jackson signed similar statements regarding his whereabouts. *Id.* at 24. On cross-examination, Nolan testified that he and Jackson had a "business-friendship relationship." *Id.* at 24–25. Although Jackson contended at the hearing that other alibi witnesses were available, no other witnesses testified on behalf of Jackson at the hearing. *Id.* at 33.[3] Following arguments by counsel, Judge Wilson determined that there was probable cause to believe that Jackson committed the crime at

issue and that the matter should be submitted to the grand jury. *Id.* Exh. 11 at 34. The judge noted that "I think it would be important that the grand jury hear the testimony of the airman in this matter also." *Id.* Judge Wilson further ordered that Jackson could remain free on the previously issued bond. *Id.*

On August 18, 1993, after hearing the evidence,[4] a grand jury returned an indictment against Jackson for rape, sexual battery, and kidnapping. *Id.* at Exh. 30. At trial, Jackson moved to suppress testimony from the photographic lineup, which was denied after a hearing. *Id.* at Exh. 15, 4–26. Following trial, which ended March 4, 1994, Jackson was found not guilty of all counts in the indictment. The instant lawsuit followed.

### *Standard of Review*

"A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Reid v. H.D. Hughes,* 578 F.2d 634, 637 (5th Cir.1978); *see* FED.R.CIV.P. 12(b)(6); *Mitchell v. McBryde,* 944 F.2d 229, 230 (5th Cir.1991). When ruling upon a motion to dismiss, the Court "must accept as true all material allegations in the complaint and must construe the complaint in [the light most favorable to] the plaintiff." *Reid,* 578 F.2d at 637; *see Bell & Murphy and Associates, Inc. v. Interfirst Bank Gateway, N.A.,* 894 F.2d 750, 752 n. 1 (5th Cir.), *cert. denied,* 498 U.S. 895, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990). If the

---

**3.** The alibi statements, mailed to the Jackson County Sheriff's Department in January 1993, *see id.* at Exh. 22, essentially provide that Jackson was at Keesler on the date at issue as follows: (1) *James A. Rivera:* around 9:30—10:00 P.M., he was looking for Jackson, who owed him money, and found Jackson and Nolan in the break room; (2) *Mark S. Nolan:* Jackson worked from 10:46 A.M. and worked until the end of the shift at 9:17 P.M., at wich time he clocked out and "stayed around socializing which is normal for Mr. Jackson"; (3) *Patricia A. Crowder:* Jackson was at work from the time she arrived at 4:00 P.M. until 6:15 P.M. when she left; (4) *Benetta L. Jones:* she clocked in from 0900 hours until 1600 hours, but stayed beyond that time with Jackson to log in items in the lost and found section; (5) *Barbara Washington:* she remembers seeing

Jackson at work until about 9:00 P.M. *Id.* at Exh. 23.

**4.** The evidence before the grand jury included testimony by alibi witnesses. Although the record indicates that all the witnesses were issued subpoenas and four alibi witnesses testified, *see* State Defs.' Mot. to Dismiss or for Summ. J., Aff. of Harkey at ¶ 5; Aff. of Starks, ¶ 4, list of witnesses and docket notes (attached), Jackson alleges that only two alibi witnesses testified before the grand jury and that their testimony was limited to answers during cross-examination. Amend. Compl. at 15. The issue regarding how many alibi witnesses testified and the scope of their testimony does not become material for purposes of the instant ruling.

Court considers material outside the pleadings, as in the instant case, the Court assesses the motion as one for summary judgment. *See* FED.R.CIV.P. 12(b)(6); *see, e.g., Burns–Toole v. Byrne,* 11 F.3d 1270, 1273–75 (5th Cir.), *cert. denied,* 512 U.S. 1207, 114 S.Ct. 2680, 129 L.Ed.2d 814 (1994).

A grant of summary judgment is appropriate when, viewed in the light most favorable to the nonmoving party "... the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact ..." FED. R.CIV.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *see Dutcher v. Ingalls,* 53 F.3d 723, 725 (5th Cir.1995). Stated differently, summary judgment must be entered against a non-moving party if that party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).[5]

### Legal Analysis

Recovery under 42 U.S.C. § 1983 is available if individuals, acting under color of state law, have deprived the plaintiff of a right, privilege, or immunity guaranteed by federal law, i.e., by the Constitution or the laws of the United States. *See. e.g., Cinel v. Connick,* 15 F.3d 1338, 1342 (5th Cir.), *cert. denied,* 513 U.S. 868, 115 S.Ct. 189, 130 L.Ed.2d 122 (1994); *Fyfe v. Curlee,* 902 F.2d 401, 403 (5th Cir.), *cert. denied,* 498 U.S. 940, 111 S.Ct. 346, 112 L.Ed.2d 310 (1990). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for

the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2nd Cir.1993) (citing *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 816, 105 S.Ct. 2427, 2432, 85 L.Ed.2d 791 (1985)), *cert. denied,* 512 U.S. 1240, 114 S.Ct. 2749, 129 L.Ed.2d 867 (1994).

In *Walters v. Ocean Springs,* 626 F.2d 1317 (5th Cir.1980), the plaintiff filed a section 1983 complaint, alleging that he was arrested on a charge of theft without probable cause. U.S. District Judge Dan M. Russell, Jr., finding no material issues of fact, granted summary judgment in favor of the defendants and denied the plaintiff's motion for a continuance to obtain affidavits. The Fifth Circuit affirmed, holding that, although a "warrantless and malicious arrest" without probable cause "violates liberty, and hence section 1983," there were no material issues of fact whether the arresting officer in that case exhibited malicious intent sufficient to destroy his qualified immunity. *Id.* at 1322–23. The Fifth Circuit cited, *inter alia, Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). *Id.* at 1322. In *Baker,* the Supreme Court declared the following:

> The Constitution does not guarantee that only the guilty will be arrested. *If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released.* Nor are the manifold procedural protections afforded criminal defendants under the Bill of Rights without limits. Due process does not require that every conceivable step be taken, at whatever cost, to eliminate the possibility of convicting an innocent person.

*Id.* at 145, 99 S.Ct. at 2695 (citation and internal quotation omitted; emphasis added).[6]

---

**5.** In *State Farm Life Ins. Co. v. Gutterman,* 896 F.2d 116, 118 (5th Cir.1990), the Fifth Circuit held the following:

> [T]he mere existence of *some* alleged factual dispute between the parties will not defeat am otherwise properly supported motion for summary judgment.... Nor is the mere existence of a scintilla of evidence sufficient; there must be evidence on which the jury could reasonably find for the plaintiff. This Circuit has described the amount of evidence the nonmoving party must bring forward as significant probative evidence. This may be equated with

the substantial evidence standard used to determine whether a directed verdict is appropriate.

*Id.* at 118 (citations and internal quotations omitted).

**6.** Although decided before the Supreme Court fine-tuned the doctrine of qualified immunity, Judge Learned Hand made the following observation in an opinion addressing the competing tensions arising when it was undisputed that prosecutors and government officials maliciously imprisoned a Frenchman on an utterly baseless charge that he was an enemy-alien German:

Safeguards remain, nonetheless, to protect the liberty interests of citizens from unreasonable seizures through the requirement of probable cause. For purposes of qualified immunity, discussed further below, the Supreme Court recently reiterated the following standard:

> Under settled law, Secret Service agents Hunter and Jordan are *entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest [the defendant].* Probable cause existed if at the moment the arrest was made . . . the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that [the defendant] had [committed a violation].

*Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991) (citation and internal quotation omitted; emphasis added). Although the Court need not determine *de novo* whether Jackson's arrest and detention were supported by probable cause, the Court is persuaded, for reasons set forth below, that probable cause existed to arrest Jackson initially and to detain him pending trial.

■ As discussed in a later point in the analysis, the Court does not subscribe to Jackson's view that he was not afforded due process. The officials in this case obtained initially an arrest warrant and Judge Walker found that there was probable cause suffi-

cient to submit to the grand jury whether Jackson should be indicted for the alleged crimes. Indeed, Jackson's blunderbuss and conclusional assertions regarding violations of due process, whether couched in purely Constitutional terms or under the remedial provisions of section 1983, must fail:

> Given the requirements that arrest be made only on probable cause and that one detained be accorded a speedy trial, we do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on *mistaken identity* or a defense such as lack of requisite intent. Nor is the official charged with maintaining custody of the accused named in the warrant required by the Constitution to perform an error-free investigation of such a claim. The ultimate determination of such claims of innocence is placed in the hands of the judge and the jury.

*Baker*, 443 U.S. at 145–46, 99 S.Ct. at 2695 (emphasis added). Although the issue was framed somewhat narrowly in *Baker*, the Court finds that the same policy concerns should apply whenever state officials work together in their respective roles to bring suspects before tribunals of justice.[7]

## I. *Immunity*

"Official immunity may be either absolute or qualified . . ." *Geter v. Fortenberry*, 849

---

The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties. . . . [I]t has been thought in the end better to leave undressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation.

. . . .

What is meant by saying that the officer must be acting within his power cannot be more than that the occasion must be such as would have justified the act, if he had been using his power for any of the purposes on whose account it was vested in him.

*Gregoire v. Biddle*, 177 F.2d 579, 581 (2nd Cir. 1949), *cert. denied*, 339 U.S. 949, 70 S.Ct. 803, 94

L.Ed. 1363 (1950). Further development of the law of immunity, set forth below, makes clear that, although absolute immunity may lie with regard to the prosecutors, government officials not connected with core prosecutorial functions will only be shielded by qualified immunity. The distinctions, in any event, are not controlling in this case because the actions of the defendants were reasonably supported by probable cause.

7. For sure, arrests supported by probable cause need not be subjected to the restraints and burdens of proof necessary to support a conviction. *See id.; e.g., Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). It follows that investigations resulting in criminal proceedings against jackson did not require the degree of precision and thoroughness characterize of the careful winnowing of evidence necessary to meet the burden of proof at trial.

F.2d 1550, 1552 (5th Cir.1988). The Court considers both.

### A. *Absolute Immunity*

Jackson's lawsuit against the defendants in their official capacities amounts to a lawsuit against the State of Mississippi, which is arguably barred by the Eleventh Amendment. *See Will v. State Dep't of Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Barry v. Fordice*, 814 F.Supp. 511, 514 (S.D.Miss.1992), *aff'd*, 8 F.3d 1 (5th Cir. 1993); *but see McMurtray v. Holladay*, 11 F.3d 499 (5th Cir.1993). Because Jackson's claims fail on other grounds, the Court need not address the issue of Eleventh Amendment immunity.

■ With regard to Jackson's allegations against Harkey and Starks, the Court notes that prosecutors are absolutely immune from liability for their decision to initiate, maintain, or dismiss criminal charges. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993); *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Boyd v. Biggers*, 31 F.3d 279 (5th Cir.1994); *Geter v. Fortenberry*, 849 F.2d 1550 (5th Cir.1988); *McGruder v. Necaise*, 733 F.2d 1146 (5th Cir.1984).

In *Buckley*, the Supreme Court noted that, "[i]n determining whether particular actions of government officials fit within a common-law tradition of absolute immunity, or only the more general standard of qualified immunity, we have applied a functional approach, which looks to the nature of the function performed, not the identity of the actor who performed it." *Buckley*, 509 U.S. at 269, 113 S.Ct. at 2613 (citations and internal quotation omitted; emphasis added). The core inquiry is whether the conduct was "intimately associated with the judicial phase of the criminal process." *Id.* at 270–71, 113 S.Ct. at 2614. Under this test, the Court finds that absolute immunity applies with regard to Harkey and Starks for their prosecutorial, but not their alleged investigatory, activities. *Id.* at 271–

72, 113 S.Ct. at 2615; *see* Amend. Compl. at 14–15.[8]

### B. *Qualified Immunity*

■ When defendants raise the defense of qualified immunity, as in the instant case, the plaintiff must "state with factual detail and particularity the basis for the claim[,]" including facts that challenge the availability of the defense of qualified immunity. *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir.1994) (citing *Elliott v. Perez*, 751 F.2d 1472 (5th Cir.1985)). The Fifth Circuit has recently provided the following mandate:

> First, the district court must insist that a plaintiff suing a public official under § 1983 file a short and plain statement of his complaint, a statement that rests on more than conclusions alone. Second, the court may, in its discretion, insist that a plaintiff file a reply tailored to an answer pleading the defense of qualified immunity. The district court need not allow any discovery unless it finds that plaintiff has supported his claim with sufficient precision and factual specificity to raise a genuine issue as to the legality of defendant's conduct at the time of the alleged acts. Even if such limited discovery is allowed, at its end, the court can again determine whether the case can proceed and consider any motions for summary judgment under Rule 56.

*Schultea v. Wood*, 47 F.3d 1427, 1433–34 (5th Cir.1995). Addressing the competing concepts inherent in a qualified-immunity analysis, the Fifth Circuit provides the following directive:

> At bottom, qualified immunity reconcile[s] two competing interests. One interest is the compensation of persons whose federally protected rights have been violated. Opposing this is the fear that personal liability will inhibit public officials in the discharge of their duties. In balancing these interests, it is inevitable that some improper actions will be shielded.

8. Arguably, absolute immunity applies to law enforcement personnel if the action taken is "intimately associated with the judicial phase of the criminal process." *See id.* at 268–71, 113 S.Ct.

at 2613–14. However, because the Court finds that qualified immunity applies to the county defendants, the Court need not decide whether the scope of *absolute* immunity extends to them.

Abrogation of qualified immunity is properly the exception, not the rule. The burden of negating the defense lies with the plaintiffs.

In assessing a claim of qualified immunity, we engage in a bifurcated analysis. First, we determine whether the plaintiff has allege[d] the violation of a clearly established constitutional right. If so, we then decide if the defendant's conduct was objectively reasonable. Accordingly, *[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.*

Therefore, our first task is to review the specific parts of the complaint to determine whether [the plaintiff] charges conduct violating clearly established federal rights.

*See Foster v. City of Lake Jackson,* 28 F.3d 425, 428–29 (5th Cir.1994) (citations and internal quotations omitted; emphasis added); *see Siegert v. Gilley,* 500 U.S. 226, 231, 111 S.Ct. 1789, 1792–93, 114 L.Ed.2d 277 (1991).

Assuming *arguendo* that Harkey and Starks participated in the investigation, *see Buckley,* 509 U.S. at 271–73, 113 S.Ct. at 2615, Jackson fails to establish facts that show that Harkey, Starks, or any of the other defendants are not shielded by *qualified* immunity. Jackson's core factual allegation is that defendants Bryant, Pope, and Jackson County Sheriff's Department "obstinately and unprofessionally focused their investigation exclusively upon ... Jackson," notwithstanding the following lack of evidence:

(1) No samples of the hair of the alleged victim were found in or on the property of the Plaintiff nor was [sic] any hair samples of the Plaintiff found on the alleged victim or any property found at the crime scene. However, samples from some unknown other individual, a Caucasian[,] was [sic] found in the rape kit sample.

(2) No fingerprints of the alleged victim were found in or on the property of the Plaintiff nor were any fingerprints of the Plaintiff found on any of the property of the alleged victim or any of the property found at the crime scene.

(3) No clothing or any other physical property of the victim was ever found in the Plaintiff's automobile or the apartment of the Plaintiff.

(4) The alleged victim claimed she had a tooth broken and bled in the automobile and on the person of the alleged perpetrator. No evidence of a struggle, a broken tooth, or bleeding was found in the Plaintiff's car or on any of his clothing or property.

(5) No serological or DNA samples collected in connection with the crime indicated that the plaintiff could be included in the population of individuals who could have committed the crime were found on the person of the alleged victim, on any clothing, or on any piece of evidence found at the scene.

(6) The Plaintiff did not match the description or the composite drawing prepared from the Identi-kit by the Defendants and based upon the description of the alleged victim. The description indicated that the perpetrator had blocked hair, short sideburns, crooked or crowed teeth, and facial hair. None of these characteristics matched Patrick Jackson.

(7) The Plaintiff had an alibi of five different reputable individuals who had no family or other close ties to him.

Amend. Compl., ¶ 15. Jackson further alleges that Starks was personally aware of Jackson's alibi defense on or before December 7, 1992, but that Starks and Harkey continued to advise the county defendants in the investigation of the case and that they knew or should have known of the procedural and constitutional abuses by the county defendants. *Id.* at ¶ 14.

Although relevant here only with regard to a qualified immunity analysis, i.e., whether the defendants reasonably believed in light of existing law that they had probable cause that Jackson committed the alleged rape and related offenses, the Court observes that the mere lack of physical evidence does not alone prevent a conviction of rape, even in the face of a credible alibi. *Cf. McKinney v. State,* 521 So.2d 898 (Miss.1988); *Christian v.*

*State,* 456 So.2d 729 (Miss.1984). Further, at least with regard to claims of false arrest, illegal detention, and malicious prosecution, officials cannot continue detaining a suspect when officials acquire "patently exonerative evidence." *See Sanders v. English,* 950 F.2d 1152, 1158, 1161–62 (5th Cir.1992). However, whether the evidence at issue was patently exonerative sufficient to create a material issue of fact must be considered in light of the evidence as a whole. *See, e.g., Baker,* 443 U.S. at 145–46, 99 S.Ct. at 2694–96; *Sanders,* 950 F.2d at 1158–64.

In this case, the Court finds that information provided by the victim was corroborated sufficiently to show that the defendants did not proceed in the investigation deliberately disregarding the purportedly exculpatory evidence. As set forth above, the victim advised Bryant that the suspect told her, *inter alia,* that he worked at Keesler *at TDY.* The victim essentially described the suspect's vehicle as a small grey automobile with white windshield wipers. This information was substantially corroborated by the subsequent investigation. Indeed, the victim detailed how the suspect reportedly worked not only at Keesler, but at TDY. Information obtained regarding Jackson's employment matched information provided by the victim, thereby raising a strong inference that the victim's identification of Jackson was reliable. That the victim's account proved to be inaccurate regarding the make of the suspect's vehicle does not alter the undisputed fact that the gray Ford Escort was small like an Omni.

The circumstantial linkage between the foregoing evidence and Jackson was strengthened by the victim's subsequent positive and unequivocal identification of Jackson in the photographic lineup. Although Jackson raises specific arguments regarding the legality of the photographic lineup and the reliability of the identification, the issue was determined in favor of the state defendants over Jackson's protests in state court.[9]

In light of other evidence pointing to Jackson, that the victim's identification of Jackson was contradicted by alibis provided by co-workers does not collapse the objective reasonableness of the defendants' belief that there was probable cause Jackson committed the crimes.

The same holds true of Jackson's allegation that the victim described the suspect as having "crooked or crowed teeth, straight cut hair and short sideburns, neither of which fit the appearance of the plaintiff." Amend. Compl. at 12. Although the Court need not address Jackson's allegation that Jackson's appearance did not precisely match the composite drawing or the victim's description of the rape suspect, the Court finds that this fact, even if true, does not unsettle a finding that the actions of the defendants were reasonable in light of the victim's subsequent identification of Jackson and other evidence provided by the victim which linked Jackson to the crime. Similarly, whether Jackson's alibi was exonerative in light of contrary evidence was ultimately an issue for jurors, who would weigh all evidence and credibility issues, and did not render unreasonable the conduct of the officials in the performance of their duties. *See, e.g., Baker,* 443 U.S. at 145–46, 99 S.Ct. at 2694–96.

Furthermore, the presence of unidentified caucasian hair in the rape kit sample, does not alone, prevent a determination that the officials' actions with regard to Jackson were objectively reasonable in light of other evidence reasonably pointing to Jackson. The report suggests that the origin of such hair is unknown. When the victim was found by officials, she was wrapped in a blanket, apparently furnished by the resident with whom she sought refuge. *See id.,* Exh. 3. The officer then gave the victim a blanket and transported her to the hospital where the rape kit sample was taken. *Id.* Results of forensic testing indicated, *inter alia,* that

---

**9.** As a related issue, it is well-stablished that constitutional claims cognizable under § 1983 that are actually litigated in state court cannot be reintroduced in federal district court. *See Howell v. Supreme Court of Texas,* 885 F.2d 308, 312–13 (5th Cir.1989), *cert. denied,* 496 U.S. 936, 110 S.Ct. 3213, 110 L.Ed.2d 661 (1990). This includes implicit findings based on constitutional claim that are, as here, " 'inextricably intertwined' with a state court decision." *Id.* at 312 (citing *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983)). The The Court need not reach the issue whether Jackson is precluded from reaching the identical issue in the instant § 1983 action.

hair, presumably caucasian, was found on the victim's gown after the exam, but that no hairs of negroid origin were observed. *See* County Defs.' Mot. to Dismiss or for Summ. J., Exh. 26. More importantly, the report indicates that no hair of any kind was found in areas that would suggest sexual contact from one race as opposed to another. No negroid hair was found from the victim's pubic combing, on the blanket, or her brassiere and shoe. The record is also devoid of any finding of unidentifiable caucasian hair from the victim's pubic combing, on the blanket, or her brazier and shoe. *See id.*[10] On these facts, the Court finds that reasonable officials could afford less investigatory weight to the presence of caucasian hair of uncertain origin on the gown. Accordingly, the Court finds that the defendants' decision to focus their efforts on Jackson, as opposed to other unidentified assailants, does not reasonably suggest a malicious or discriminatory motive. Nor would a clinical test undertaken to determine the presence of negroid hair on the victim suggest a discriminatory motive when the victim described the suspect as a black male.

The Court further finds that, even with the benefit of hindsight, Jackson's factual allegations do not overcome a presumption that the defendants can successfully assert qualified immunity. *See Sanders,* 950 F.2d at 1158–64; *cf. Hunter,* 502 U.S. at 229, 112 S.Ct. at 537 (reasonable determination by agents that probable cause existed to arrest defendant, even if agents or magistrate were mistaken, entitles agents to defense of qualified immunity). Contrary to Jackson's sundry allegations, *see* Pl.'s Mem. Brief in Opp. to Mot. to Dismiss at 16–18; Amend. Compl. at 13–19, 25, even assuming *arguendo* that officials were in some respects negligent, there is no

remedy under section 1983 for the negligent actions of state actors. *See Daniels v. Williams,* 474 U.S. 327, 334–36, 106 S.Ct. 662, 667, 88 L.Ed.2d 662 (1986). Nor can vicarious liability on a theory of *respondeat superior* be asserted in a section 1983 action. *Irby v. Sullivan,* 737 F.2d 1418, 1425 (5th Cir.1984) (citations omitted).

Nonetheless, Jackson seeks to impose direct liability on Jackson County because the Mississippi Code gives them authority over "all ... matters of county police," MISS.CODE ANN. § 19-3-41 (1995), or *respondeat superior* liability upon sheriff Pope because "[a]ll sheriffs shall be liable for the acts of their deputies," MISS.CODE ANN. § 19-25-19 (1988). *See* Amend. Compl. at ¶¶ 3, 32. However, it is well established that the parameters of constitutional claims are not defamed by the "vagaries of state law." *See Coon v. Ledbetter,* 780 F.2d 1158, 1162 (5th Cir.1986) (addressing MISS.CODE ANN. § 19-25-19). It follows that Jackson's other attempts to harvest constitutional claims by invoking Mississippi statutes must fail. *See* Amend. Compl. at ¶¶ 5, 22 (invoking implied duty of district attorney to supervise and train administrative staff from oath of office pursuant to MISS.CODE ANN. § 25-31-11 (1972)).[11] Further, Jackson fails to allege with particularity any policy that rises to the level of a constitutional violation. *See Brown v. Bryan County,* 53 F.3d 1410 (5th Cir.1995); *Ashe v. Corley,* 992 F.2d 540, 545 & n. 7 (5th Cir. 1993).

■ As set forth above, the Court finds that the actions of the defendants were objectively reasonable in light of clearly established law. It follows that Jackson's claim that Harkey or Sheriff Pope provided inadequate training to their staff is moot. *See*

---

**10.** Nor were there any findings of semen or blood, as set forth above, other than the small amount of blood found on the condom wrapper, which was insufficient to track its origin. *Id.* at Exh. 28. Notwithstanding the paucity of physical evidence that sexual contact had occurred, the circumstantial evidence in the police reports detailing that the victim was found naked in the area corroborated the victim's reports that she was, in fact, raped. *Cf. McKinney,* 521 So.2d at 899 (conduct of victim under circumstances allows jury determination that victim had been raped). Nor do the foregoing issues address

facts relevant to the sexual battery charge based on the victim's alleged forced participation in an act of oral sex. In any event, the victim's explanation that the suspect wore a condom before initiating vaginal contact provides a reasonably objective basis for the absence of semen.

**11.** The Court further observes that Jackson's attempt to allege the violation of a statutory duty amounts to an allegation of negligence, which is not a cognizable theory of relief under § 1983. *See Daniels,* 474 U.S. at 335–36, 106 S.Ct. at 667.

*Brown,* 53 F.3d at 1424–25. Even assuming *arguendo* that such a claim were not moot, Jackson's bare and general allegation regarding inadequate training lacks the necessary causal link to the asserted constitutional harms. *See id.* at 1424 (whether particular officer not satisfactorily trained or whether a training program is faulty is not alone determinative of particular injury-causing conduct); *Grandstaff v. City of Borger,* 767 F.2d 161, 169–70 (5th Cir.1985) (direct causal link between inadequate training and official misconduct required), *cert. denied,* 480 U.S. 916, 107 S.Ct. 1369, 94 L.Ed.2d 686 (1987). Nor does the record establish any policy or practice with regard to training that would trigger a section 1983 remedy. *See, e.g., Brown,* 53 F.3d at 1420–25.[12]

Jackson contends in his opposition brief that the defendants' actions were "brazen illegal acts," "slipshod," "incompetent," "wilful," "capricious," "arbitrary," "spiteful," and "racially motivated," *see* Pl.'s Mem. Brief in Opp. to Mot. to Dismiss at 7, 13–14, and further alleges in his complaint that the defendants were "grossly negligent," acting with "malice" and in "reckless disregard" for his constitutional rights. *See* Amend. Compl. at 13, 23–27. Unless the determination of probable cause by the defendants "turn[s] on facts peculiarly within the knowledge of the defendants," a plaintiff cannot support his section 1983 claims with mere conclusional assertions, "bald allegations," or "general characterizations." *Schultea,* 47 F.3d at 1432; *see Wicks v. Mississippi State Employment Servs.,* 41 F.3d 991, 995–96 (5th Cir.) (conclusional allegations of First Amendment violations and racial discrimination), *cert. denied,* —— U.S. ——, 115 S.Ct. 2555, 132 L.Ed.2d 809 (1995). The Court finds that Jackson's claims are defined in patently conclusional rhetoric. Although Jackson attempts to circumvent the general

rule barring conclusional assertions by contending that the defendants possessed knowledge that would indicate probable cause was lacking, this argument must fail. Jackson fails to suggest with particularity or raise any compelling argument regarding what facts peculiarly within the knowledge of the defendants would be unearthed by permitting further discovery.

■ Jackson contends that Bryant unconstitutionally limited his liberty during his release on bail pending trial. Specifically, Jackson alleges that, although he was released on bail, Bryant sought and obtained the restriction that Jackson not drive his automobile except back and forth to work and that he make no changes to his apartment or personal property should they elect to conduct a search of the same. *See* Amend. Compl. at 10–11. The county defendants deny this factual allegation in their answer. Jackson provides no support whatever for his allegation regarding Bryant's bail restrictions. Further, the closing summary report reflecting Jackson's release contains no such restrictions. *See* County Defs.' Mot. to Dismiss or for Summ. J., Exh. 21. Nor do Judge Wilson's remarks at the preliminary hearing. *Id.,* Exh. 11 at 34–35. The Court finds that this factual issue fails to overcome the presumption that the defendants are shielded by qualified immunity.[13]

■ Alternatively, the Court finds that the bail restrictions imposed on Jackson, if true, were not so severe as to unreasonably restrain him from his liberty. *Cf.* 18 U.S.C. § 3142(c)(B)(iv) (empowering judicial officer to impose upon bailee restrictions on personal associations, place of abode, or travel sufficient to assure bailee's appearance at trial), § 3142(c)(B)(xiv) (empowering judicial officer to "satisfy any other condition that is reason-

---

12. Moreover, as Jackson's allegations are confined to the general, the Court observes that the record suggests that Starks and Bryant received general training and certification required in their respective positions. *See* County Defs.' Mot. to Dismiss or for Summ. J., Exh. 31 (Bryant's professional certification awarded by Board of Law Enforcement Officer Standards and Training); State Defs.' Mot. to Dismiss or for Summ. J., Aff. by Harkey at ¶4 (attached as unnumbered exhibit); annual report summariz-

ing Stark's continuing legal education requirements (same).

13. Although not determinative, Jackson's argument loses some of its luster in light of his broad consent to search his person and property on December 7, 1992. *See id.,* Exh. 20. Jackson concedes that Bryant never searched his automobile or his apartment. Amend. Compl. at 11.

ably necessary to assure the appearance of the person as required").[14] Further, although not necessary to the instant ruling, the Court finds that Bryant's imposition of bail restrictions, if true, would not overcome the defendants' qualified immunity because the defendants had a reasonable basis to believe that probable cause would support a search warrant—even if a search would otherwise exceed the scope of Jackson's consent to search his belongings on December 7.

Having determined in the foregoing analysis that the factual basis for Jackson's lawsuit does not demonstrate that the defendants' actions were objectively unreasonable in light of clearly established law, the Court finds that Jackson has not pierced the shield of qualified immunity. Contrary to Jackson's lengthy but misplaced legal arguments, the Court finds that the policy concerns favoring dismissal without the benefit of discovery are triggered. Indeed, the Court finds that discovery and further delay is neither necessary nor proper in this case. *See Wicks,* 41 F.3d at 994–97. The Court therefore finds that Jackson's motion for continuance or enlargement of time to respond to the county defendants' amended motion for summary judgment is not well-taken and should be denied.

## II. *Remaining Federal and Pendant State Claims*

The Court further finds that, because the defendants had an objectively reasonable basis to investigate, arrest, detain, and initiate prosecutorial action against Jackson, his state law claims of negligence, malicious prosecution, and false imprisonment should be dismissed with prejudice. *See, e.g., Enlow v. Tishomingo County,* 962 F.2d 501 (5th Cir.1992).[15] Alternatively, without addressing to what extent such immunity was waived to the extent of liability insurance, *see* MISS. CODE ANN. §§ 1146–5, 1146–15, 11–46–16 (Supp.1995), the Court finds that Jackson's allegations and supporting factual arguments fail to establish any pendent state law claim that would survive the defendants' ability to invoke sovereign immunity under Mississippi law. *See* MISS.CODE ANN. § 1146–9 (Supp. 1995). Finally, the Court finds that Jackson's claims against USF & G, the State of Mississippi, Jackson County, the Board of Supervisors of Jackson County, and the various Doe defendants, which all derive from Jackson's unsupported allegations, should be dismissed with prejudice.

### Conclusion

For reasons set forth above, the Court concludes that the defendants' motions for summary judgment [38–1, 39–1] should be granted. The Court finds that Jackson fails to demonstrate that defendants Harkey and Starks are not absolutely immune for their actions in prosecuting Jackson for the kidnapping, rape, and sexual battery of Aimee Lyn Broussard. The Court also finds that, even assuming *arguendo* that absolute immunity is not applied to the alleged involvement of Harkey and Starks during investigatory activities, they are shielded by qualified immunity because their actions were objectively reasonable in light of clearly established law. Additionally, because the Court finds that the defendants had an objectively reasonable basis to investigate, arrest, detain, and initiate prosecutorial action against Jackson, he fails to show that the actions of the county defendants, including detective Bryant, were not objectively reasonable in light of clearly established law. Accordingly, the Court finds that the county defendants are shielded by qualified immunity.

The Court further finds that, because the policy concerns favoring dismissal without the benefit of discovery are triggered, Jackson's motion for continuance or enlargement of time to respond to the county defendants' amended motion for summary judgment [40–1] should be denied. Additionally, the Court finds that, for reasons set forth above, Jack-

---

**14.** Mississippi statutory authority does not provide provisions parallel to those cited by analogy in the federal code. *See* MISS.CODE ANN., §§ 99–5–1, *et seq.* (1972).

**15.** Although persuasive on its face, the Court need not reach the state defendants' argument that Jackson's tort claims are barred because he failed to give formal written notice pursuant to MISS.CODE. ANN. § 11–46–11 (Supp.1995). *See* State Defs.' Mem. Brief in Supp. of Mot. to Dismiss or for Summ. J. at 32.

son's pendent state law claims of negligence, malicious prosecution, and false imprisonment should be dismissed with prejudice. Accordingly, the Court finds that Jackson's claims against USF & G, the State of Mississippi, Jackson County, the Board of Supervisors of Jackson County, and the various Doe defendants, which all derive from Jackson's core allegations, should be dismissed with prejudice. A final judgment in conformity with and incorporating this opinion shall issue this date dismissing Jackson's section 1983 and pendent state law claims.